Good morning, your honor. Good morning. In this case, unlike the last one, it does not deal with a credibility issue in this matter. It was found to be 100 percent correct and to have suffered past persecution. Pull that mic a little closer to you, the black one. This one here? Sorry. I'm sorry. He was already found to have suffered past persecution. This created, obviously, the rebuttable presumption that he had a well-founded fear of future persecution. And it was on this basis that the immigration judge denied his request and his relief, and eventually, through the BIA, we end up here. Essentially, what our argument is, is that from a starting point, the DHS presented no evidence whatsoever of any changed conditions. There were country reports that were provided. I'm not clear from the record whether it was my office that actually provided them, my associate, or a combination of the government and my office. They were made a part of the record. But there was no reference to those whatsoever. There was nothing stated in argument by DHS that country conditions has changed. The immigration judge, who also, as one can tell from the transcript of the original hearing, was quite vocal with asking questions to Mr. Stepanyan, also never really directly questioned changed conditions. However, he did take it upon himself in his ruling to find that conditions had changed. And he based that upon three items from Mr. Stepanyan's testimony, because he was the only witness and that was the only testimony that was taken. The first one was his stated intention to return to Armenia when he had came here in 2000, that he was here for business and that he intended to return. This is not fatal to having a fear of future persecution. As he credibly testified, and again, we must take all of his testimony as true, he had an intention to return. The political party that he had represented, for which he was persecuted for being a member of, had recently won seats in Parliament, and he believed that perhaps things would get better. He was trying to run a business and live a life, in spite of the fact of the horrible atrocities that were committed against him and his family prior to. When he was here in the United States, he was informed by his relatives that an incident had occurred where a vehicle had ran through the wall of his business. Along with that, commensurate with that, there were phone calls from the NSS, National Security Service, to his home in Armenia, seeking his whereabouts. This created, in our opinion, a well-founded subjective fear, as well as an objectively reasonable fear in Mr. Stepanyan's mind that this persecution had not ended. And it wasn't as if so much time had passed. The persecution that he had suffered, which was past persecution, occurred in late 1998, and approximately six months later, in mid-1999. This act of the car driving through his business occurred about six months after the last incident of persecution. So it wasn't as if things had materially changed for a long period of time and life was very fine and there was no problems. The second item that the immigration judge relies upon in finding that there was no future fear of persecution, he stated that the car accident itself was a random misadventure that really had nothing to do with anything. The problem with that is, as the case law clearly shows, you cannot look at these things in a vacuum. You must look at these things in the totality of the circumstances. You need to understand that the people that were persecuting Mr. Stepanyan, the NSS, were in power in 1998 and 1999 when the past persecution occurred. They were still the people in power in 2000 when this incident at his business occurred while he was here in the United States. And they're in power today. And they are still in power today and there's not a lot of good things happening there right now. The third item that they used is that somehow Mr. Stepanyan's political party had been dissolved and therefore he shouldn't have any fear because his party wasn't there. They couldn't press upon him. They also tried to make light of the fact that he wasn't a high-ranking member of his party. Whether he was a high-ranking member or not really doesn't matter because he was apparently high-ranking enough to be persecuted in the first place, which was found. The issue of that his party had dissolved is not exactly correct. His party had merged with another party. They won some seats in parliament. That party dissolved. But his party still exists. The People's Party is still the opposition party in the country of Armenia that exists today and has never stopped existing. His testimony showed that he never ceased to be a member. The judge says, well, you're not participating. It would probably be difficult to participate in America for the opposition party in Armenia. If he's sent back, is the immigration judge implying that he should change parties, not be politically active, or should he resume being a member of the People's Opposition Party, which he has been a member of? So these three items, which the immigration judge clings to in finding no fear of future persecution, we find not to be substantial evidence and, in fact, feel that this matter should be reversed on that basis. And throughout the rest of the stages of this, DHS simply agrees with the immigration judge's findings. The VIA simply agrees with the immigration judge's findings. And no one really ever discusses whether there's been any real change in the country's conditions. Want to save some time? Sure. Okay. We have plenty of time left, almost nine minutes. Thank you. No questions? Respond as you wish. I don't hear. Very good. Thank you, Your Honor. Thank you. Mr. Robbins, back up. One moment. Counsel, you may want to sit at the counsel table. If there's some slight possibility he may say something you disagree with, we want to deprive you of that opportunity. Mr. Robbins. Good morning again, Your Honors, and may it please the Court, once again I'm here on behalf of the Attorney General and Respondent. The evidence here, I think the real issue here is how the DHS rebutted the presumption of a well-founded fear of future persecution. What did they offer? They didn't offer any evidence, but they don't have to. They are allowed to rely. So when you rebut a presumption, you don't have to present any evidence at all? Not if there are concessions made that you elicited on cross-examination, which speak directly to what you need to rebut. Tell us about that. Okay. On cross-examination, they elicited testimony that directly pertained to changed country conditions in Armenia. Notably, they talked about how the Mias Newton party for whom he had worked in the 1999 parliamentary elections had dissolved, and the one politician with whom he claimed his major affiliation and the main basis for his political persecution on association with this politician, that politician, while he was assassinated, and that certainly does speak to the past persecution here, that he hasn't held power since 1999. Are you saying because he was assassinated that he's no longer there and therefore he's no longer associated with them? That's kind of a weak argument. Well, the problem, the reason that he originally faced persecution, Your Honor, was because of his association with this high-ranking official, this presidential candidate. I'm sorry, what? Go ahead. Was because of his association with this high-ranking candidate. Without that high-ranking candidate there, the question is, well, what reason are you going to have, is the NSS going to have for persecuting you any longer? What confidence should we place in an immigration judge who finds that a particular political figure, Karen Demircian, quote, is no longer a significant political figure in Armenia and is no longer of great consequence when, in fact, she had been assassinated? I think it's a he, he was assassinated. Karen is a he? I think it's Karen. Karen is a he? I believe so, Your Honor. He had been assassinated? Yes. It sort of reminds me of this news story about a month ago on one of the major news channels where they compared President Bush leaving office, not terribly popular, with the way in which Abraham Lincoln left office, not very popular, and sort of faded away, forgetting that Abraham Lincoln had been assassinated. Can we place any kind of confidence in an IJ to make a statement like that? Well, it certainly is unsettling that he didn't acknowledge that he had been assassinated, but I think the reason he did that is because he was trying to focus on whether or not there was a well-founded fear of future persecution for the petitioner, because that's really what's important about the fate of Karen Demircian. The fact is he simply hasn't been in office since 1999, and what they're looking for, again, is whether or not the NSS is going to have a reason to actually persecute him. Is it his son acting with the same group? He is, and as the petitioner testified himself, again, another one of these concessions that was elicited on cross-examination, he continues to live in Armenia unharmed. So if they're not going to go after the son. So if he's harmed, then it doesn't make any difference. If he's killed, that doesn't make any difference because he's no longer existing, and if his son is there unharmed, then it proves the point. It seems sort of a contradictory analysis. Well, the point is it's what he's claiming. He's claiming that he's going to be persecuted on account of his political opinion based on his affiliation with a politician who's no longer in play. So speaking to whether or not that person's son, who's still in the party, is going to be harmed says a lot about whether conditions have changed to the extent that they're going to still be going after people who have been associated with this politician. You know, in preparation for the argument, I Googled Armenia and came up with a March 3, 2008 New York Times article. The headline is, Emergency Order Empties Armenian Capital Streets. Here's the first paragraph. Tanks blocked central streets in the capital of this tiny mountain country on Sunday, a day after Armenian authorities clashed with demonstrators in a violent confrontation that left at least eight people dead and more than 130 wounded. That's changed circumstances? Your Honor, the change, there's no question, I think, that there is a pretty extensive amount of turbulence in Armenia politically. I mean, I know about the situation in Armenia as well. I saw an article the other day. But the question here isn't whether or not there is general political strife. The question is whether or not Petitioner himself is going to face a well-founded fear. Doesn't that suggest that if he goes back, he has to remain politically inactive? That if he does anything to associate himself with the successors of the movement he was part of, he puts himself at risk, so the premise is he won't do that? Is that what underlies the IJ's conclusion? Well, the bottom line is he never testified as to what – I mean, he was asked during examination what – I'm sorry. He was asked during – I mean, he had the opportunity to say on examination, I'm going to go back and be part of this party. I mean, there's no indication. When he was asked about his political activities, he said he wasn't politically active and that he just listened to these things on the radio and that he was no longer involved in these kind of political things. Now, I know, obviously, as Petitioner said, he's been in the United States. But, I mean, if you're not going to introduce any evidence that shows that – I mean, don't forget – He's entitled to the presumption. It's your burden at that point, the government's burden. You are not trial counsel. It's the government's burden to come forward with evidence. And in almost all the cases – well, almost all the cases we see, the government, in fact, does put on some evidence, the public health reports or something else. Your Honor, if they make concessions about the change in country conditions during cross-examination, they certainly don't have to submit evidence if there's enough – The concessions you're talking about is the change in caste of characters. It's not that a new day has dawned in Armenia and all is peace and quiet or that there's been a – we have a lot of Guatemala cases. There's talk about peace accords and so forth. But Armenia is basically Armenia. And all I really see here is that, well, the guy that you were following before isn't on the scene anymore. End of story. And if the presumption is on the government to show changed conditions, that probably means more than the fact that time has passed and the caste of characters have changed. But that's not really a change in condition. The condition seems to be pretty much what it was before. Well, the problem was – had specifically to do with the political – it wasn't just the one politician. It was also this new student party which had dissolved. And the petitioner admitted that this party had dissolved. And that was the party that he had worked so hard. All his political activity had been with getting this party elected in the 1999 parliamentary elections. And they were no longer a factor because they didn't dissolve. There was no more Mias Newton party to push or to politically support. And that's the problem. Now, is it possible that he would have gone back to Armenia and supported another political group? It's possible. But he didn't testify as to anything of that fact. There was no indication in the record that that was the case. So given the fact that they'd shown that there was a change in country conditions with respect to this political group that he does – that his whole claim is based on, which doesn't exist anymore, that is enough evidence of changed country conditions. And remember, once the presumption is rebutted, they still have to show that they have a well-founded fear of future persecution. And then they have this claim, I might add, which he claims he got these – from February of 2000 to October of 2000, he got these phone calls regarding this car that crashed into his store. And he claims that this was on account of – they were still trying to go after him for all intents and purposes, except that he had already overstayed his visa by then. Remember, he claims that he had always intended to go back. So now you're trying to attack his credibility on a view? No, what I'm saying is, Your Honor, there's a difference here between the reliability of the evidence and the sufficiency of the evidence. With respect to this claim, which he claims was the impetus for his decision not to return to Armenia, we have here – he's already overstayed his – I mean, it's just – But if the IG has found him credible and he says he has some subjective fear, we have to take that as a fact on appeal, don't we? Well, he didn't say that he had a subjective fear. He just said that he believes that he received these phone calls. But that doesn't mean that that's sufficient to establish a well-founded fear of future persecution. And remember, after the presumption has been rebutted with respect to the political party dissolving and no longer facing any fear of future persecution based on your affiliation with that party, then you still have a chance to show that you might show a well-founded fear. And given the fact that he had already overstayed and the fact that this was – and nobody – it wasn't a political attack. It can't be said that it was reasonable to say that this one event was going to be, you know, an indication that he would be persecuted or that the NSS was going after him, especially after he had already left the country. So – and again here, the standard – you know, I don't mean to beat a dead horse, but, you know, to reiterate, the standard is does the record compel a contrary conclusion here? You know, the petitioner was allowed to rely on his credible testimony to establish past persecution. And the DHS can rely on the cross-examination testimony and the concessions that he made and the admissions that he made to rebut that well-founded fear – that presumption of a well-founded fear of persecution. I mean, that's really what happened here. There's another point I want to make with respect to the State Department reports, because, you know, if you read the briefs, it can be a little misleading. The petitioner hasn't said this, but I want to make sure that we're clear. This isn't a situation where the petitioner established past persecution and the DHS walked up to the immigration judge and said, here are the State Department reports. We'd like to rebut them. The State Department reports weren't part of the immigration judge's decision, weren't part of the board's decision. The only time the immigration judge even acknowledged the State Department reports was when he was looking at whether or not it was valid to say that people were being politically persecuted, because the State Department reports of 1999 specifically said that this type of political persecution was not systemic and was occasional and sporadic. But the immigration judge said, well, despite that, I believe you when you say you were past persecuted. So the State Department reports weren't used against them. And, in fact, the immigration judge specifically said in proceedings, in one of the master calendar hearings, he said, look, if nobody submits country reports, I'm going to submit them on my own. And he, in fact, did submit the 2004 and 1998 country reports. And then the DHS submitted the 1999 country reports before the merits hearing, because that really spoke more to the time period that the petitioner claimed to have been politically persecuted. So, you know, the brief of the petitioner tries to liken this case to Malina Estrada and Chand and other cases of the like in order to show, in order to make it seem as though the immigration judge was relying on these state country reports as the way to rebut the presumption. That's not really what happened here at all. I mean, those cases stand, the whole rationale behind those cases is that we're looking for an individualized analysis of whether or not they're going to face persecution. And that's what we had. I mean, there's nothing more individualized than the petitioner's own testimony with respect to the different fears that he might face if sent back to Armenia. And does the record compel a conclusion, given the fact that his political party had been dissolved? Does it compel a conclusion that they didn't rebut that presumption? I don't think you can say that. So with that, unless there are any other questions with respect to this case. Thank you for your argument. Thank you very much. Okay. The case just argued will be submitted for the record. Thank you both for your arguments.
judges: Hawkins, Thomas, Clifton